UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER JEFFERSON,<br><br>           Plaintiff,<br><br>   v.<br><br>JOHN TUTEUR, Assessor of Napa County, and DOES 1 through 20, inclusive,<br><br>           Defendants. | No. C 04-3419 MHP<br><br>**MEMORANDUM & ORDER**<br>**Re: Motion for Summary Judgment** |

   Plaintiff Peter Jefferson brought this action, originally under 42 U.S.C. section 1983, alleging that defendant John Tuteur has violated plaintiff's constitutional rights by repeatedly failing to issue a "Notice of Reassessment" that reflects the correct tax basis for certain property owned by plaintiff. Now before the court are defendant's motion for summary judgment and plaintiff's motion for leave to file an amended complaint. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court rules as follows.

BACKGROUND[1]

   Plaintiff became the legal owner of the property at 4407 Rockwood Avenue in Napa, California (the "property") on March 1, 1989. Plaintiff initially held the property in trust for the

1

benefit of Tessie Dimoff, who died in 1990. As the legal owner of the property, plaintiff has been required to pay property taxes based on the property's assessed value. This lawsuit stems from a disagreement over the proper timing and amount of the assessment.

Defendant, the assessor for Napa County, originally assessed the property as of December, 1990, the date of Ms. Dimoff's death. In 1991 and 1992, plaintiff challenged the timing of the assessment in two hearings before the Napa County Board of Equalization ("Board"). The Board agreed with defendant that the property should have been assessed as of the date of Ms. Dimoff's death.

Plaintiff then appealed the Board's determination by filing a lawsuit in Napa County Superior Court. On May 8, 1997, the Superior Court adopted plaintiff's position and ordered defendant to reassess the property as of March 1, 1989. Defendant initially reassessed only two-thirds of the property as of the earlier date, arguing that Ms. Dimoff retained a one-third legal interest in the property until her death. Plaintiff moved to find defendant in contempt of the Superior Court's order, and the Superior Court found defendant in contempt on June 14, 1999. Defendant then reassessed the entire property as of March 1, 1989, which reduced the assessed value of the property from $220,000 to $185,000, and sent refund checks to plaintiff. Defendant did not send plaintiff a formal "Notice of Reassessment" in connection with the refund. Plaintiff contends that a formal Notice of Reassessment is a prerequisite for challenging the amount of the assessed value.

On the basis of defendant's failure to provide a formal notice, plaintiff again moved to find defendant in contempt on May 26, 2000. The Superior Court tentatively ruled on June 29, 2000 that defendant was required to provide notice. Subsequent to the June 29, 2000 ruling, defendant provided plaintiff with both a Notice of Reassessment for the 1999–2000 tax year and a set of twenty (semiannual) tax bill corrections for the preceding ten years. On July 17, 2000, after a further hearing at which defendant presented the tax bill corrections, the Superior Court ruled that defendant was no longer in contempt. Plaintiff appealed the Superior Court's determination on January 12, 2001; the appeal was dismissed on August 21, 2001. Declaration of Wakako T. Uritani in Support of Defendant's Motion for Summary Judgment ("Uritani Dec."), Exh. L at 2.

Despite plaintiff's contention that a formal Notice of Reassessment is required before a

2

property owner is permitted to challenge the amount of a reassessment, plaintiff filed two Applications for Changed Assessment—challenging the amount of the reassessment—with the Board on August 28, 2000. The Board granted plaintiff's application and conducted a hearing regarding plaintiff's property on August 19, 2003. At the August 19 hearing, which plaintiff attended, the Board determined that the assessed value of the property should be reduced from $185,000 to $180,000. Plaintiff did not appeal the Board's determination in state court.

On August 19, 2004, plaintiff filed an action in this court styled as a "Complaint in the Nature of Mandamus and for Damages". After at least two case management or status conferences and substantial discussions at those conferences regarding the merits of this case and after an unsuccessful settlement conference, defendant moves for summary judgment and plaintiff seeks to amend his complaint.

Plaintiff's proposed First Amended Complaint, which is for all relevant purposes identical to plaintiff's original complaint other than the addition of two new claims, states four claims for relief. Each of the four claims is predicated on two alleged illegal acts by defendant: withholding a formal Notice of Reassessment and retaliating against plaintiff for plaintiff's original challenge to the assessment. First, plaintiff argues that defendant's failure to issue a formal Notice of Reassessment violates the Due Process Clause of the Fourteenth Amendment. Second, plaintiff argues that defendant's failure to issue a formal notice deprived plaintiff of his First Amendment right to petition for redress of grievances by challenging the amount of the assessment. Third, plaintiff argues that defendant's actions violate the Equal Protection Clause of the Fourteenth Amendment. Fourth, plaintiff argues that defendant's continued efforts to collect an allegedly invalid debt constitute an unlawful "enterprise" in violation of the RICO statutes, 18 U.S.C. section 1961 et seq.

In his motion for summary judgment, defendant argues that plaintiff is not currently entitled to a notice because the assessor is not required to send out a notice following a determination by the Board. Defendant also argues that he could not have "retaliated" against plaintiff for the same reason; no notice was required. Finally, defendant argues that he is entitled to qualified immunity, as it was not a violation of clearly established law to fail to issue formal notice.

3

DISCUSSION

For purposes of resolving the instant motion, the facts alleged in plaintiff's proposed First Amended Complaint can be divided into two periods of time. From 1991, when plaintiff first challenged the date of the reassessment, to August 21 2001, when plaintiff's appeal of the finding that defendant had properly performed the court-ordered reassessment was denied, plaintiff challenged the *timing* of the reassessment and the applicable interest rate for the reimbursements. From August 20, 2000, when plaintiff filed his Application for Changed Assessment, to August 19, 2003, when the Board reduced the assessed value of plaintiff's property, plaintiff challenged the *amount* of the reassessment.

With respect to the earlier period, plaintiff has already litigated the timing of the reassessment and the adequacy of notice given with respect to that reassessment in the context of the state court contempt proceedings. In the July 17, 2000 order denying plaintiff's second contempt motion, the court concluded that "[t]he notice of reassessment has been given by the Assessor and that is no longer an issue." Uritani Dec., Exh. I. The state court also found that defendant had attempted to comply with the state court's earlier order in good faith, and that no further sanctions were warranted.

As for collateral harms alleged by plaintiff, such as the need to expend attorneys' fees, the court notes that the proper time to request such relief was during the state court proceedings. Indeed, the state court awarded fees in at least one instance, and invited a motion for fees in at least one other. Uritani Dec., Exh. F at 2; Id., Exh. D at 4. This court is barred under California preclusion law from revisiting issues and claims that were actually litigated in the previous state court proceedings, or that arise from the same transaction and could have been litigated. C.D. Anderson & Co. v. Lemos, 832 F.2d 1097, 1100 (9th Cir. 1987). There is no dispute that the events of 1991 to 2000, to the extent they are at issue in the current lawsuit, are precisely the same events that were the basis of the earlier state court litigation.

Turning now to the second time period, plaintiff's claim that defendant has an outstanding obligation to issue a Notice of Reassessment is flawed on two grounds. First, plaintiff's argument that the assessor must issue a Notice of Reassessment *after* an appeal to the Board lacks any legal

4

merit. California Revenue and Tax Code section 75.31 states that the assessor must issue such a notice whenever the assessor has determined a new base year for the assessed value of the property, which must occur before any appeal can take place. Section 75.31 says nothing, however, about what the Board must do after considering the appeal. The relevant regulation governing appeals to the Board requires only that the Board convey its ruling orally to the appellant. 18 Cal. Admin. Code § 325(a)(1). Plaintiff was present at the Board hearing in August 2003 and heard the Board's ruling; the Board has therefore discharged whatever obligation it had to provide notice to plaintiff.

Second, plaintiff's claim of constitutional injury depends on the assumption that defendant's failure to issue Notice of Reassessment impaired plaintiff's ability to appeal the amount of the reassessment before the Board. Plaintiff admits, however, that he succeeded in obtaining a hearing before the Board on August 19, 2003, and that the Board reduced the assessed value of the property. Declaration of John Carr in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ¶¶ 6–7. Plaintiff's substantive rights are therefore no longer at issue, and the court is forced to conclude that the instant lawsuit has been pursued purely out of spite for some time. In a further demonstration of pettiness, after expending time and legal resources attempting to obtain a Board hearing on the value of his property, plaintiff argued at the Board hearing that the Board lacked jurisdiction to review the amount of the assessment because no Notice of Reassessment had issued. Id. ¶ 6. The Board rejected this argument and proceeded to give plaintiff the hearing he had requested. Although plaintiff now complains that the Board did not treat him fairly, plaintiff did not appeal the Board's determination in state court. Whatever bad behavior may have occurred on both sides during the prosecution of plaintiff's legal claims, it is beyond the power (or interest) of this court to wag its finger disapprovingly or to declare that plaintiff is entitled to a now-meaningless piece of paper.

The sums of money at issue in this lawsuit are staggeringly small—less than 2% of the *difference* in assessed value of plaintiff's property over the course of the relevant time period—and apparently were already paid to plaintiff long ago. The attorneys' fees in connection with the federal litigation alone almost certainly dwarf the amount in controversy. Defendant's motion for summary judgment is therefore granted. Since under the proposed amendment of the complaint plaintiff's

5

claims would fare no better, indeed, the result would be the same, the motion for leave to file an amended complaint is denied.

This litigation should now come to an end.

CONCLUSION

For the above reasons the court hereby DENIES plaintiff's motion for leave to amend and GRANTS defendants' motion for summary judgment as to each of plaintiff's claims. The clerk shall close the file.

IT IS SO ORDERED.

Date: January 30, 2006

_____
MARILYN HALL PATEL
United States District Judge
Northern District of California

ENDNOTES

1. Unless otherwise noted, background facts are taken from plaintiff's proposed First Amended Complaint or are not in dispute. For purposes of deciding the instant motion for summary judgment, the court assumes without deciding that plaintiff should be permitted to file the First Amended Complaint.